# The United States District Court
# for the Western District of Pennsylvania

| | |
|---|---|
| Thomas J. Stephenson, | No. |
| Plaintiff, | Jury Trial Demanded |
| v. | |
| MCLS, Inc. and Cennial Company, Inc., | |
| Defendants. | |

# Complaint

## Parties

1. Plaintiff, Thomas J. Stephenson (hereafter, "Thomas" or "Stephenson"), is an adult resident of Lawrence County, Pennsylvania.

2. At all times pertinent to this dispute, Stephenson was a 55 year-old male, who has suffered from profound bilateral deafness since birth. In addition to constituting an impairment of the major bodily function of hearing (a neurological function), Stephenson's deafness has impaired his functioning as to numerous major life activities ("MLAs"), including the MLAs of working, caring for oneself, creating and maintaining social and familial relationships, and receiving education and training. Stephenson's deafness therefore constitutes an actual or regarded-as *disability* as that term is used and construed by the Americans with Disabilities Act, 42 U.S.C. § 12102.

3. Defendants, MCLS, Inc. ("MCLS"), and Cennial Company, Inc. ("Cennial), are

4.     corporate entities, registered as such with the Pennsylvania Department of State. Defendants share a common business address of 10 National Way, Cranberry Township, PA 16066.

4. Defendants constitute an *integrated enterprise*, as that term is used and construed by the U.S. Equal Employment Opportunity Commission ("EEOC"). As an integrated enterprise, Defendants jointly own and operate approximately 20 McDonald's fast-food restaurants, for which they maintain a workforce of approximately 1,500 employees.

## Venue

5. Venue is appropriate in this judicial district. Defendants hired Stephenson in the Western District, and in the same district directed and supervised Stephenson's work performance, paid him wages, and ultimately terminated his employment. The allegations set forth in this complaint, including the illegal employment practices to which Defendants subjected Stephenson, occurred in the Western District.

## Jurisdiction

6. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and federal civil rights jurisdiction under 28 U.S.C. § 1343 for Stephenson's claims arising under Titles I & V of the Americans with Disabilities Act of 1990 (as amended, 42 U.S.C. §§ 12112(a) & (b)).

## Facts

7. Because of his deafness, Stephenson cannot communicate in spoken English. He primarily communicates, instead, using American Sign Language ("ASL").

8. As a linguistic matter, ASL differs fundamentally from written or spoken English. The two languages employ different grammars and syntaxes. Furthermore, ASL is wholly dependent upon movement of the face, torso, and hands to convey information–facial gestures alone account for approximately one-third of ASL. In contrast, while physical movements and gestures are frequently used in English for emphasis, they are not required to convey meaning.

9. Persons born with deafness in the United States during the last half of the twentieth century commonly learned ASL as their first language. To the extent such persons later learned English, it was as a second language.

10. Thomas Stephenson began learning ASL in childhood, and eventually gained fluency in it. By comparison, his command of spoken English is at best rudimentary because he cannot reliably read the lips of English speaking persons to understand what information the speaker is trying to convey.

11. In the summer of 2016, Stephenson was searching for work. In August, he went to the Portersville, PA location of one of the twenty McDonald's fast food restaurants owned by Defendants, and applied there for the position of janitor.

12. At all times pertinent to this dispute, supervisory management at

    Defendants' Portersville restaurant (hereafter, "restaurant") consisted of the following persons: Linda Campbell, General Manager; Kim Moyer, First Assistant Manger; and Cynthia Cummings, Second Assistant Manager.

13. Defendants accepted Stephenson's application and scheduled him to appear for a combined interview and orientation session (hereafter, "orientation") on or about September 22, 2016. At the time that Defendants accepted Stephenson's application, they understood that Stephenson suffered from profound deafness.

14. Stephenson arrived for the orientation accompanied by his wife, Karen Stephenson ("Karen"). Together, the Stephensons met with Cynthia Cummings ("Cummings"). For the entirety of their meeting, Cummings spoke orally to Karen, who interpreted and translated for Thomas using ASL.

15. But for Karen having provided interpretation and translation services during the September 22, 2016 orientation, Thomas would not have been able to comprehend the information that Cummings conveyed orally during the session.

16. During the orientation session, Cummings understood that Thomas relied on the interpretation and translation services that his wife provided. Shortly after the session began, Karen specifically explained to Cummings that Thomas would require the services of an ASL interpreter in order to receive effective training for the janitor's job. Cummings told the Stephensons that while she, Cummings, lacked the authority to secure such services for

Thomas, she would nonetheless pass this information up the restaurant's chain of command. Thereafter, Defendants notified Stephenson that he was to report for his first shift of employment, on or about October 6, 2016.

17. Despite Cummings' assurance that Thomas' need for an ASL interpreter would be passed to upper management, Defendants never provided him with the requested accommodation. Nor did Defendants ever engage in an interactive process with Thomas to determine the scope and duration of interpretation and translation services he would need in order to succeed at his job.

18. From the first date of his employment through his last–i.e., from approximately early October through early November 2016–Stephenson was never provided with an ASL interpreter or translator. Throughout this same period, Stephenson appeared as scheduled for training, and for his regularly scheduled work (which he performed to the best of his ability), and for at least one corrective-action counseling regarding his work performance. But at no point throughout this period did Stephenson have a command of what Defendants expected of him, because Defendants never conveyed that information to him in the language that he, due to his deafness, relied upon: ASL.

19. In light of its commercial nature, Defendants' restaurant kitchen featured all manner of complex and hazardous machinery, equipment, and fixtures. Because Defendants failed to provide Stephenson during his training with

interpretation or translation services, he was left guessing as to how to perform his job in a safe and effective manner, or the extent to which he was to perform any specific task.

20. Thus, Defendants deprived Stephenson of proper training (and thus knowledge) of how to perform tasks essential to the janitor's job, including the cleaning of the deep fryer and replacement of its cooking oil and the selection of soaps to use when cleaning particular items. In addition, because no one clearly explained to him the restaurant's practice and policy regarding the frequency and duration of employee breaks, Stephenson was left guessing as to these matters.

21. During his first days on the job, when he was paired with Matt Hookway, another janitor, Stephenson tried as best as he could to observe and imitate Hookway as the latter performed his work. That approach did not serve Stephenson well, however, as several weeks into his employment the restaurant's general manager, Linda Campbell, pulled Stephenson aside for a counseling and corrective-action session that Campbell conducted in English. During the session, Stephenson tried his best to surmise the gravamen of Campbell's concerns. Apparently, other employees at the restaurant had been complaining that janitorial work was not being completed in a competent manner, as evidenced by the restaurant's condition at the conclusion of Stephenson's shifts. But such observations could not have come as any surprise to Campbell or Defendants, given that they had failed to

accommodate Stephenson's request to receive training that a person with deafness could comprehend.

22. By depriving Stephenson of effective training, Defendants guaranteed not only that he would fail at his job, but that he would also incur the wrath of co-workers who, believing he'd been properly trained, had simply refused to perform the job in a competent and complete fashion. Indeed, Stephenson was treated coldly by his co-workers, who shunned him, and by his supervisors, who blamed him for failing to properly perform tasks that he hadn't been trained to do.

23. On at least two separate occasions during his month of employment, Stephenson reiterated the request for an ASL translator that his wife had first made of Cummings at the orientation/interview session held in late September. Stephenson made a second request to Hookway early in his tenure (during the time Stephenson was shadowing the latter), and a third request to Campbell, when she called Stephenson in for counseling and corrective action. Moreover, in addition to requesting an ASL interpreter and translator for his training, Stephenson provided Campbell with the phone number of a person who could provide these services. Nonetheless, Defendants failed to provide ASL interpretation or translation services to Stephenson for the entirety of his employment, from the date of his orientation and interview, through his first weeks of work, continuing through the corrective action/counseling session with Campbell, and ending

7

with the meeting Stephenson had with First Assistant Manager, Kim Moyer on November 9, 2016, at which time Moyer fired him.

24. Defendants' actions in terminating Stephenson's employment exacerbated the symptoms of Stephenson's pre-existing mental health conditions, and left him psychologically devastated.

25. In the aftermath of his termination, Stephenson filed a timely charge of discrimination against Defendants with the U.S. Equal Employment Opportunity Commission ("EEOC"). On June 23, 2017, the EEOC issued a "probable cause" determination that Defendants had violated the ADA by: (1) subjecting Stephenson to denial of reasonable accommodation for his disability; (2) failing to provide reasonable accommodation on the basis of disability to Stephenson, thereby denying him terms and conditions of employment equal to those afforded employees who have no disability; and (3) subjecting Stephenson to performance improvement and discharge on the basis of disability and Defendant's own failure to provide reasonable accommodation. (**Exhibit 1**). On January 24, 2018, the EEOC issued a right-to-sue letter to Stephenson. (**Exhibit 2**). Accordingly, Stephenson timely presents the following claims for relief, as set forth below.

## Causes of Action

### Count I – Plaintiff versus Defendants – Unlawful discharge on the basis of disability, in violation of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12112(a) & (b)).

26. All previous paragraphs are hereby incorporated by reference.

27. The above-described acts demonstrate that Defendants' decision to terminate Plaintiff's employment was motivated by animus for Plaintiff's actual or regarded-as disabilities.

28. Defendants' decision to terminate Plaintiff's employment on the basis of his actual or regarded-as disabilities violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112(a).

### Count II – Plaintiff versus Defendants – Disability-based Hostile Work Environment in violation of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12112(a) & (b)).

29. All previous paragraphs are hereby incorporated by reference.

30. The above-described acts demonstrate that Defendants subjected Plaintiff to a hostile work environment based on Plaintiff's actual or regarded-as disabilities and his repeated requests for reasonable accommodation.

31. In subjecting Plaintiff to a hostile work environment based on Plaintiff's actual or regarded-as disabilities and requests for reasonable accommodation, Defendants violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112(a) & (d).

**Count III – Plaintiff versus Defendants – Failure to Provide Reasonable Accommodation in violation of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12112(a) & (b)).**

32. All previous paragraphs are hereby incorporated by reference.

33. The above-described acts demonstrate that Defendants failed to provide Plaintiff with reasonable accommodation for his actual or regarded-as disabilities.

34. Defendants' failure to provide reasonable accommodation violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112(b).

**Relief**

35. Stephenson requests all legal remedies available to him. Stephenson requests that the Court convene a jury trial in this matter, and that judgment be entered in his favor and against all Defendants, and that he be awarded compensatory damages for all losses, including lost wages and fringe benefits, and for severe pain and suffering, including emotional distress, anxiety, humiliation, embarrassment, and loss of the enjoyment of life. Stephenson also seeks an award of punitive damages, attorney fees, costs, and such other relief as is just and appropriate.

Respectfully submitted,


s/ Richard S. Matesic
Richard S. Matesic, Esquire
PA ID 72211
1007 Mount Royal Boulevard
Pittsburgh, PA 15223
rs.matesic@verizon.net
(412) 492-8975

11